ADAM L. BRAVERMAN
United States Attorney
JANET A. CABRAL (Cal. Bar No. 168900)
AMANDA L. GRIFFITH (Cal. Bar No. 243854)
Assistant United States Attorneys
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8715/8970
Email: janet.cabral@usdoj.gov/mandy.griffith@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ISAIAH SMALLWOOD-JACKSON, <br><br> Defendant. | Case No. 18cr1805-BAS <br><br> UNITED STATES' MOTIONS IN LIMINE TO: <br> (A) Admit Expert Testimony <br> (B) Admit Images <br> (C) Admit Defendant's Statements <br> (D) Exclude Witnesses During Trial <br> (E) Preclude Evidence not Disclosed in Discovery <br><br> Date: October 15, 2018 <br> Time: 10:00 a.m. |

Comes now the plaintiff, United States of America, through its counsel, Adam L. Braverman, United States Attorney, and Janet A. Cabral and Amanda L. Griffith, Assistant United States Attorneys, and files its motions in limine.

## I.

## **BACKGROUND**

On or about September 16, 2017, a minor female (MV-1) residing in Oceanside, California, within the Southern District of California, began "chatting" online with another

individual using the account "Logan121261" and the user name "Logan" through a mobile application, "Spotafriend." "Logan" listed his age as 17 on the application, but in the description in his profile he noted "(must be open minded) I'm actually 21." In her profile, MV-1 indicated she was 14 years old, which is her true age. The individual identified as "Logan" was later identified by law enforcement as described below as Isaiah Smallwood-Jackson.

Shortly after beginning their conversation, on September 16, 2017, Jackson asked MV-1 if she read his "bio," which stated Jackson was 21 years of age. MV-1 asked "So your 21?" Jackson responded "Yes." MV-1 asked Jackson if it was bad that she still wanted to "cuddle" with him. Jackson responded, "Not at all, is it bad that I don't care about your age?"

Jackson gave MV-1 his phone number, and the two continued their conversation using text messaging on their cellular phones. Jackson asked MV-1 to send photographs of herself and engaged in discussions with her about sexual acts he would like to perform on her, including oral copulation and digital penetration. The photographs that were sent included clothed images and semi-nude images.

On September 17, 2017, MV-1 and Jackson resumed their text conversation. Shortly after the text messaging resumed, Jackson asked, "Okay cuteness, so are you ready to loose your virginity?" To which, MV-1 responded, "Wait are we going to have sex?" Jackson told MV-1 they would only have sex if she was ready and wanted to. Jackson asked if it was okay that he did not use a condom when they have sex. MV-1 asked Jackson if she would get pregnant if they did not use condoms. Jackson told her that she would not. MV-1 then asked, "Then what are condoms for then?" Jackson replied, "For people who don't know what they're doing."

As the conversation continued, Jackson asked MV-1 to take photographs of herself, which included photographs depicting MV-1's genitalia. Jackson also started asking MV-1 if he could come to house and they could have sexual intercourse. MV-1 expressed her

2

nervousness about meeting in person but she ultimately allowed Jackson to come to her house.

Later that night, Jackson told MV-1 that he arrived at her house, and MV-1 told him to go to the side of her house. MV-1 told Jackson that he had to be quiet. Approximately 25 minutes later, Jackson sent MV-1 a text message stating, "I didn't hurt you did I?" MV-1 responded, "A little." Jackson then told MV-1, "I am so sorry, next time tell me to stop and I'll stop whatever I'm doing that s hurting you."

After Jackson departed, MV-1 reported to her sister that she had been raped. MV-1's sister called the police who responded. MV-1 reported to law enforcement that she had been sexually assaulted by Jackson, and her cellular phone was seized as evidence. Later that same night, MV-1 was taken to Palomar Health Center and examined by Kelly Valencia, R.N.

On September 21, 2017, Oceanside Police Department Detective Jonathan Boone showed MV-1 a photographic line-up. MV-1 positively identified Jackson, who she only knew as "Logan," as the person with whom she corresponded. Further, a review of MV-1's cellular phone showed a profile for "Logan" in the Spotafriend application, and several photographs of Jackson. Later that same day, Oceanside Police Department arrested Jackson and charged him with violations of California Penal Code relating to the alleged sexual assault on MV-1 and his communications with her.

Once at the police station, Detective Boone told Jackson he was under arrest for unlawful intercourse with a minor, and then read Jackson his Miranda rights. Detective Boone asked Jackson if he understood those rights, to which Jackson responded "Yes." He then asked Jackson if he wanted to talk to him, to which Jackson responded "Yeah, absolutely." After obtaining some biographical information from Jackson, Detective Boone asked Jackson if he knew why he had been arrested. Jackson responded "I texted a girl, but I didn't actually meet anybody, which is the confusing part." Jackson initially told Detective Boone he had been talking on an application called "Tinder" with a girl who he

was "pretty sure" was white, and who he believed was not 18. Jackson then told Detective Boone he also talked to girls on an application called "Spotafriend" but that he had never met up with anyone. Jackson then told Detective Boone he had talked to the one girl on the phone, with role-playing, but that he did not know why it was a problem.

Detective Boone confronted Jackson with the information he had obtained from the victim's phone, including that he had sexted with a girl on the Spotafriend application, had engaged in sexually explicit conversations with her, and had requested that she send sexually explicit images. Detective Boone showed Jackson copies of the communications downloaded from the victim's phone and read portions of the communications to him. Jackson admitted that was his account and those were their communications. However, Jackson continued to deny that he ever met the victim in person.

Detective Boone read Jackson the content of additional communications obtained from the victim's phone, including the victim providing Jackson with her address and Jackson responding by text, "I'm here. Can you open it [the gate]." Detective Boone noted the texts stopped at that point for about 20 minutes, and Jackson responded, "[t]hat's when I called her" to engage in phone sex. When Detective Boone asked about the next text Jackson sent, asking "I didn't hurt you, did I?," Jackson indicated it was all part of the fantasy.

Jackson eventually admitted he went to the victim's house, met with her, and "it went too far." Jackson admitted engaging in sexual acts, including oral copulation and digital penetration of the victim outside her home, and then returning to his home.

## II.

## **PROCEDURAL HISTORY**

On April 4, 2018, the grand jury returned an Indictment charging JACKSON with violations of 18 U.S.C. § 2251, production of child pornography, and 18 U.S.C. § 2422(b), enticement of a minor. On September 21, 2018, a Superseding Indictment was returned by the grand jury alleging an additional underlying violation of the California Penal Code

4

as to Count 2. On September 25, 2018, Jackson was arraigned on the Superseding Indictment and entered a not guilty plea. A jury trial is set for October 23, 2018.

## III.

## MOTIONS IN LIMINE

### A. The Court Should Admit the United States' Expert Testimony

On September 24, 2018, the United States provided written notice of its intent to call Kelly Valencia, R.N., to testify at trial. Ms. Valencia will testify about the physical examination she performed of MV-1 related to the alleged sexual assault by Jackson. The United States intends to offer Ms. Valencia's expert testimony of her medical interpretations and to provide general information about human anatomy and genitalia. Such interpretations and information will be based on her education, training, and experience regarding sexual abuse examinations. Ms. Valencia's opinion testimony may also include the following:

(1) Medical history from the patient, the patient's guardian, or law enforcement, which is pertinent to diagnose and treat the patient's physical and mental condition that occurred because of sexual abuse. Such testimony, including information identifying the offender, is important to ensure proper physical and mental care of the victim and ensure the victim will return to a safe environment.

(2) The medical findings and observations in this case, which are consistent with MV-1's report of sexual assault.

Copies of Ms. Valencia's report, along with her curriculum vitae, have already been produced to Jackson.

Federal Rule of Evidence 702 allows the admission of expert testimony where: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principle and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. In <u>Daubert v. Merrell Dow</u>

Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), it clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. See also Kumho, 526 U.S. at 152. Consistent with Kumho, Rule 702 provides that all types of expert testimony present questions of admissibility for the trial court in deciding whether the evidence is reliable and helpful. Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence. See Bourjaily v. United States, 483 U.S. 171 (1987).

Plainly stated, "[t]estimony is admissible under Rule 702, if the subject matter at issue is beyond the common knowledge of the average layman, the witness has sufficient expertise, and the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." United States v. Winters, 729 F.2d 602, 605 (9th Cir. 1984) (citing McCormick's Handbook of the Law of Evidence § 13, at 29-31 (E. Cleary ed., 2d ed. 1972)).

The medical examination, diagnosis, and treatment of child sex abuse victims falls outside the common knowledge of the average layperson. Because Ms. Valencia has sufficient education, knowledge, and expertise in those areas, under Rule 702, she can provide expert testimony.

Ms. Valencia's expert testimony will be similar to that offered in United States v. Lukashov, 694 F.3d 1107, 1116 (9th Cir. 2012), where the Ninth Circuit affirmed the admission of expert testimony that the child victim's story of sexual abuse was consistent with the medical evaluation. The Court noted that such testimony "was helpful to the jury because some jurors would not have a general understanding of an eight-year old's sexual knowledge and vocabulary and level of sensory detail to look for in a child's allegations of sexual abuse." Id. The Court further stated that "[b]y giving her opinion that her medical

findings and observations were consistent with [the victim's] allegations of sexual abuse, [the doctor] permissibly applied her expertise to aid the jury in understanding the evidence." Id. (citing with approval United States v. Whitted, 11 F.3d 782, 786 (8th Cir. 1993), and United States v. Antone, 981 F.2d 1059, 1062 (9th Cir. 1992)); see also United States v. Charley, 189 F.3d 1251, 1265 (10th Cir. 1999)(concluding that the district court did not abuse its discretion in allowing a doctor to "summarize the medical evidence and express an opinion that the evidence was consistent or inconsistent with the victim's allegations of sexual abuse"). Because Ms. Valencia's testimony will be similar to that offered in Lukashov, it is admissible.

Because the Ninth Circuit has held that "improper buttressing" of victim testimony occurred when expert-witness psychologists and psychiatrists "testified that . . . particular children in [a] particular case could be believed," United States v. Binder, 765 F.2d 595, 602 (9th Cir. 1985), overruled on other grounds by United States v. Morales, 108 F.3d 1031, 1035 n.1 (9th Cir. 1997)(en banc), the government will not ask Ms. Valencia to opine about whether she believed MV-1 was being truthful.

Additionally, treating medical professionals may testify as fact witnesses. See United States v. Wells, 211 F.3d 988, 998 (6th Cir. 2000) (holding that the district court did not abuse its discretion by admitting the testimony of treating physicians as lay testimony when the physicians testified to their first-hand observations and treatment of a patient); see also Davoll v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999)(recognizing, prior to the Rule 701 amendment in 2000 prohibiting lay witnessed testimony based on scientific knowledge, that "a treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of a party"). The government will ask Ms. Valencia to testify regarding her observations and treatment of MV-1.

B. **The Court Should Admit the Images and Allow the Images to be Published**

In its case-in-chief, United States intends to publish the images of child pornography that were produced at the request of and possessed by Jackson. The government has a right to present such evidence at trial. "Stipulating to an element of the offense does not generally constitute an evidentiary alternative having equal or greater probative value." United States v. Betcher, 534 F.3d 820, 825 (8th Cir. 2008); United States v. McCourt, 468 F.3d 1088, 1091 (8th Cir. 2006) citing United States v. Sewell, 457 F.3d 841, 844 (8th Cir. 2006). Accordingly, "a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense." McCourt, at 1091 citing Old Chief v. United States, 519 U.S. 172 (1997); see also United States v. Hay, 231 F.3d 630, 639 (9th Cir. 2000) (admission and publishing of images goes to knowledge of the content).

The jury must make a determination that a minor is depicted in one or more of the images and that one or more of the images depicts a minor engaged in sexually explicit conduct. United States v. Salcido, 506 F.3d 729, 733-4 (9th Cir. 2007). Expert testimony is not required. Id. ("We agree with every other circuit that has ruled on the issue that expert testimony is not required for the government to establish that the images depicted an actual minor."); see also United States v. Rearden, 349 F.3d 608 (9th Cir. 2003). The Court should admit such evidence.

C. **The Court Should Prohibit Certain References**

Evidence of, and thus argument referring to, a defendant's health, finances, education, and potential punishment is inadmissible and improper.

Federal Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Moreover, Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1

(2010 Edition). Reference to the Defendant's health, age, finances, education, and potential punishment may be relevant at sentencing. However, at trial, such references are not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. See United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991).

### D. The Court Should Exclude Witnesses During Trial

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present case has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. As such, the case agent's presence at trial is necessary to the United States. However, the United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

The Government does not oppose a defense investigator being present during the trial.

//
//
//
//
//
//
//
//
//
//
//

### E. The United States' Motion for Reciprocal Discovery

On February 22 and April 19, 2018, Jackson filed motions to compel discovery. The United States has complied with all of its discovery obligations. Consistent with Rule 16(b) of the Federal Rules of Criminal Procedure, the United States seeks reciprocal discovery from Jackson, including identification of any expert witnesses. As of the date of the preparation of these motions, the defendant has produced no reciprocal discovery, and has not notified the United States of any expert witnesses.

Date: September 28, 2018

Respectfully submitted,

ADAM L. BRAVERMAN
United States Attorney

*/s/ Janet A. Cabral*
Janet A. Cabral
Amanda L. Griffith
Assistant U.S. Attorneys
Attorneys for the United States

# CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED THAT:

I, Janet A. Cabral, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the United States' motions in limine and this Certificate of Service on all parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: September 28, 2018

/s/ Janet A. Cabral
JANET A. CABRAL
Assistant U.S. Attorney