**DEBRA A. DIIORIO**
Attorney at Law
California Bar No. 138018
964 Fifth Avenue, Suite 214
San Diego, California 92101
Telephone: (619) 544-1451
Facsimile: (619) 544-1473
E-mail: debra_diioriohall@yahoo.com

Attorney for Defendant **Jackson**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### (HON. CYNTHIA BASHANT)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 18CR1805-BAS |
| Plaintiff, | ) Date: October 15, 2018 |
| v. | ) Time: 10:00 a.m. |
| | ) **REPONSE IN OPPOSITION TO** |
| ISAIAH SMALLWOOD JACKSON, | ) **GOVERNMENT'S MOTIONS IN LIMINE** |
| Defendant. | ) |

**TO:   ADAM BRAVERMAN, UNITED STATES ATTORNEY; AND JANET CABRAL AND AMANDA GRIFFITH, ASSISTANT UNITED STATES ATTORNEYS.**

Isaiah Jackson, the defendant in this case, by and through counsel, Debra A. DiIorio, hereby files the following response in opposition to the government's *in limine* motions, filed September 28, 2018 [docket entry 26].

Although Mr. Jackson has made a good faith effort to include all appropriate issues herein, he reserves the right to contest additional legal or factual matters that may arise at the motions *in limine* hearing.

//

//

//

//

I.

**STATEMENT OF FACTS**

On September 24, 2018, the day before Mr. Jackson was arraigned on the Superseding Indictment, the government provided written notice of its intent to call an expert, Kelly Valencia, R.N. to testify at trial.

**A. The Court Should Limit The Proposed Expert Testimony**

To the extent that Ms. Valencia offers "expert testimony of her medical interpretations and to provide general information about human anatomy and genitalia" Mr. Jackson does not object. However, the government states Ms. Valencia's testimony may also include:

> (1) "Medical history from the patient, the patient's guardian, or law enforcement which is pertinent to diagnose and treat the patient's physical and mental condition that occurred because of sexual abuse. Such testimony, including information identifying the offender, is important to ensure proper physical and mental care of the victim and ensure the victim will return to a safe environment."
>
> (2) The medical findings and observations in this case, which are consistent with MV-1's report of sexual assault.

Mr. Jackson objects to this proposed testimony as set forth below, and asks this Court to specifically preclude any expert or lay testimony that MV-1 may suffer from autism.

**1. Federal Rule of Evidence 704**

At this point in time, Mr. Jackson has not received proper notice under Federal Rule of Criminal Procedure 16(a)(1)(G) nor Federal Rule of Evidence 703, 704, and 705. Thus far the government has provided a generic summary of what the expert would testify to, but has not specified what she has relied upon that forms the bases of her opinion. Such evidence is required under Fed. R. Evid. 705, Fed. R. Crim. P.

2

16(a)(1)(C), and *United States v. Fort*, 472 F.3d 1106, 1121 (9th Cir. 2007).  Under the circumstances of the present case, the portion of the proposed testimony "including information identifying the offender, is important to ensure proper physical and mental care of the victim and ensure the victim will return to a safe environment" is of very limited relevance in assisting the jury to objectively evaluate the government's case.

Moreover, to the extend that the proposed testimony contains an opinion or inference as to the defendant's mental state or condition constituting an element of the crime charged or a potential defense thereto, the testimony is expressly forbidden by FRE 704 and by Ninth Circuit law. *See United States v. Morales*, 108 F.3d 1031, 1036 ((th Cir. 1997) ("[t]he language of Rule 704(b) is perfectly plain.  It does not limit its reach to psychiatrists and other mental health experts.  Its reach extends to all expert witnesses).  Thus, that portion of the proposed expert testimony should be precluded.

**2. Federal Rule of Evidence 702**

Under FRE 702, an expert may testify in the form of opinion if:
(a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Here, the government has provided insufficient notice as to the proposed testimony and the bases relied upon by the proposed expert to satisfy the requirement of FRE 702.  Nor has it been shown that the expert has "reliably applied the principles and methods to the facts of the case. The Court should preclude the proposed expert testimony.

//

**3. Request For a *Daubert/Kumho* Hearing**

District courts have a general "gatekeeping" duty to ensure that proffered expert testimony "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). *c.f. Kumho Tire Co. V. Carmichael*, 526 U.S. 137, 147 (1999). Mr. Jackson hereby requests this Court conduct a *Daubert/Kumho* hearing prior to allowing any expert to testify regarding MV-1's "medical history from the patient, the patient's guardian, or law enforcement" and its pertinence to "diagnose and treat the patient's physcial and mental condition that occurred *because* of sexual abuse" (emphasis added) as well as any hearsay testimony, "including information identifying the offender" in order to determine whether this testimony is reliable and relevant.

It should be noted that the case cited by the government permitting expert testimony, *United States v. Lukashov*, 694 F.3d 1107, 1116 (9th Cir. 2012) involved an 8 year old girl whose lack of sexual knowledge and vocabulary and level of sensory detail made it permissible for a doctor to offer an opinion that the medical evidence was consistent with the victim's allegations of sexual abuse. Notwithstanding the government's offer to not opine whether MV-1 was being truthful, the proposed testimony is very likely to result in improper buttressing of her testimony, and there is no indication that the concerns in *Lukashov* are implicated here. *United States v. Binder*, 765 F.2d 595, 602 (9th Cir. 1985) (overruled on other grounds, *United States v. Morales*, 108 F.3d 1031 (9th Cir. 1997) (*en banc*).

**4. Federal Rules of Evidence 404(b) and 403**

The government also provided notice in its September 24, 2018 letter of its intent to introduce "bad act" evidence under FRE 404(b) as follows:

> Specifically, within the evidence obtained from defendant's phone was a chat message between defendant and a user "jaclynb127." During the course of that chat conversation, defendant made several statements regarding his willingness to engage in sexual conduct with minors including that he "would fuck a 12 year old," and "I'm 21 talking to a 14 year old."

4

The government believes these statements are admissible under 404(b) to demonstrate intent and lack of accident or mistake.

As an initial matter, there is an insufficient foundation to prove Mr. Jackson was the author of the chat message, nor has any investigation been done by the defense nor information provided by the government as to the identity of "jaclynb127." Moreover, the evidence is inadmissible under Rule 404(b) which specifically precludes the admission of propensity evidence in a criminal case. Finally, the evidence is significantly more prejudicial than probative.

Introduction of this evidence would require a delay of the trial to investigate, and may well result in a mini-trial within this trial as to whether Mr. Jackson was demonstrating criminal intent or was engaging in role play, expressing a sexual fantasy, or some other form of protected speech.

The Ninth Circuit has been very clear that when evidence has marginal relevance but great prejudice, it should be excluded under Rule 403. "Where the evidence is of very slight (if any) probative value, it is an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury" *United States v. Hitt*, 981 F.2d 422 (9th Cir. 1992); see also *United States v. Lawrence*, 189 F.3d 838 (9th Cir.1999) (reversing conviction for admission of prejudicial and irrelevant evidence of defendant's "marriage of convenience"). In *United States v. Brooke*, 4 F.3d 1480 (9th Cir. 1993) the Ninth Circuit reversed the defendant's convictions due to the introduction of irrelevant, prejudicial and extrinsic evidence of the defendant's "manipulative" character. Id. at 1482. The government introduced evidence that defendant Brooke falsely claimed to have cancer and then afterwards claimed to have been miraculously cured. The government also introduced evidence that defendant Brooke improperly used funds provided for cancer treatment. The introduction of this evidence was erroneous.

In *United States v. Bland*, 908 F.2d 471 (9th Cir. 1990), for example, the Ninth

5

Circuit reversed a conviction under 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) because the district court admitted evidence of the state of mind of the officer whom the defense suggested had planted the firearm to justify his "bad shoot" of Bla nd while Bland was fleeing.  The "state of mind" evidence revealed to the jury included the officer's knowledge that Bland had been charged with the molestation, torture and murder of a seven-year old girl.  *See Id*. at 473.  Although the court found the evidence relevant, it held that anything other than the officer's <u>knowledge</u> of the outstanding warrant was unfairly prejudicial:  "We cannot expect the jurors to remain impartial when the information that should not have been admitted permits them to believe that acquitting the defendant may mean releasing an exceedingly dangerous child molester and killer into the community." *Id.* at 473.  *See also United States v. Gillespie*, 852 F.2d 475 (9th Cir. 1988); *Cohn v. Papke*, 655 F.2d 191 (9th Cir. 1981) (holding that even assuming *arguendo* that evidence of defendant's homosexuality was admissible under Rule 404, it clearly should have been excluded under Rule 403); *White v. Cohen*, 635 F.2d 761 (9th Cir. 1981) (reversing on the grounds that evidence about defendant's fugitive status and potential responsibility for the murder of a young girl "might well have been the critical factor in swaying the jury to side with the plaintiff."); *United States v. Aims Back*, 588 F.2d 1283 (9th Cir. 1979)(similar).

      Similarly, when a trial court admitted evidence of defendant Brown's efforts to recover his property at gunpoint on one occasion and his shooting into Mr. Duke's home on another to prove lack of mistake when the defendant was tried for shooting and killing a postal employee in *United States v. Brown*,  873 F.2d 1265 (9th Cir. 1989), the Ninth Circuit first expressed some doubts as to the relevance of such evidence under 404(b).  Even if the evidence was relevant, its relevance was substantially outweighed by prejudice against Mr. Brown; accordingly, the trial court abused its discretion in admitting the prior bad acts into evidence.  *Id.* at 1269.

6

Finally, the Ninth Circuit has indicated that the government's complaint "the defendant opened the door" is insufficient to justify the admission of any and all evidence which prejudices the defense. In both *Hitt* and *Bland* the government specifically argued that the defendant had "opened the door" and the prejudicial evidence was necessary to rebut the defendant's claims. In both cases, the Ninth Circuit declined the invitation, holding the relevance of the prejudicial evidence did not outweigh the prejudice to the defendant.

**B.     Admission and Publication of Images**

The government has moved to admit the alleged images of child pornography to the jury. Mr. Jackson does not object to the admission of the alleged images of child pornography, as this is an element required to be found by the jury and Mr. Jackson does not intend to stipulate to this element.

However, the photographs are subject to FRE 403; thus, until the government decides which images, and the total number of images it intends to introduce, Mr. Jackson reserves his right to object under Rule 403.

**C.     Evidence of Mr. Jackson's Employment Should Not Be Precluded**

By virtue of the investigation conducted in this case, Mr. Jackson's employment is relevant. Moreover, his state of mind and intent are relevant to explain his actions and intent. To the extent such evidence is relevant to explain Mr. Jackson's actions in this case, the jury must be allowed to hear it.

Defense counsel is aware that potential punishment at trial is inadmissable, and has no intention of making any "blatant play for sympathy and jury nullification."

**D.     Exclusion of Witnesses**

Mr. Jackson agrees that witnesses should be excluded from trial, with the

7

exception of the government's case agent and the defense investigator.

### E. Reciprocal Discovery

Mr. Jackson understands his discovery obligations and will comply with the Rules of Evidence and provide to the government any evidence it intends to use at trial as well as any identification of any expert witnesses as soon as possible.

### F. The Court Should Carefully Examine and Exclude or Limit the Use of Summary Charts Which Function as a Closing Argument

The government has yet to disclose any summary charts to the defense. However, anticipating that the government will be using such charts, Mr. Jackson submits the following case law. Of particular concern are charts which summarize several different types and pieces of evidence and become a continuing closing argument presented to the jury throughout the case.[1] Such charts should only be used during closing argument *after* the evidence has all been admitted.

Summary charts must be viewed with caution because of their potential for abuse. *United States v. Richardson*, 233 F.3d 1285, 1293 (2000); *see also United States v. Hart*, 295 F.3d 451, 455 (5th Cir. 2002) ("Recognizing the 'powerful impression which charts can make upon a jury, vesting the charts with "an air of credibility" independent of the evidence purported to be summarized,' we have repeatedly cautioned that trial judges 'must carefully handle their preparation and use.' "). The danger of relying on summaries instead of actual evidence is well recognized. Consequently, several Circuits have stressed that a trial court is "charged with grave responsibilities to make certain that an accused is not unjustly convicted in

---

[1] These charts are distinct from charts submitted under Rule 1006. However, to ensure that the charts being offered by the government are proper summaries under 1006 and not the type of summaries which should only be used as demonstrative aids in closing, this Court must first inspect the charts and hear the specific objections of Mr. Jackson.

8

a 'trial by charts.' " *Id.* (quoting *Gordon v. United States*, 438 F.2d 858, 876 (5th Cir. 1971)).

When summary charts are used, the trial court must guard against situations where figures, computations, and charts acquire "an existence of their own, independent of the evidence which gave rise to them". *Holland v. United States*, 348 U.S. 121, 128, 75 S.Ct. 127, 131 (1954). In the immortal words of Judge Jerome Frank, summaries that are prepared specifically for use in litigation are "dripping with motivations to misrepresent." *Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942) aff'd, 31 U.S. 109, 63 S.Ct. 477 (1943). For these reasons, this Circuit requires the district court to take the following precautions before charts are even used as demonstration aids. First, the trial court is to personally examine the charts outside the presence of the jury to ensure that everything contained in them is supported by proof. *United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984), citing *United States v. Abbas*, 504 F.2d 123, 124 (9th Cir. 1974), *cert. denied*, 421 U.S. 988 (1975). If the court determines that the charts are supported by proof, the trial court may, in its discretion, "allow the charts to be used as a testimonial aid for counsel in argument, but should not admit the charts as evidence or allow their use by the jury during deliberations" *Id.*; *see also United States v. Wood*, 943 F.2d 1048, 1053-4 (9th Cir. 1991)(upholding the district court's refusal to admit summary charts noting "[w]e have long held that such pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations."). As noted by the *Abbas* Court, "[t]he danger inherent in such evidence is that it would act as a speaking, continuous witness throughout the jury's deliberation of certain specific, isolated -- albeit significant -- testimony to the exclusion of the totality of the evidence taken at the trial which must be viewed in its entirety." 504 F.2d at 125.

The dangers of these demonstrative summaries or charts are heightened when

those devices are used in opening statement. Opening statement is understood by courts, attorneys, and academics to be a critical point at which each side first advances its case and jurors begin to form impressions accordingly. *See, e.g.*, *Binegar v. Day*, 80 S.D. 141, 148, 120 N.W.2d 521, 525 (1963) (noting that during opening statement, "the jury is peculiarly alert and impressionable and the importance of confining the opening statement to the language and intent of the statute is obvious"); *Maleh v. Florida E. Coast Properties, Inc.*, 491 So. 2d 290, 291 (Fla. Dist. Ct. App. 1986) (lawyers' contentions that opening statement is a critical stage of proceedings is confirmed by empirical studies, which show that is when the jury forms lasting impressions of the case); L. Timothy Perrin, *From O.J. to Mcveigh: The Use of Argument in the Opening Statement*, 48 Emory L.J. 107 (1999) (highlighting dangers and prevalence of allowing argument in opening statements); James R. Lucas, Opening Statement, 13 U. Haw. L. Rev. 349 (1991) ("No amount of instruction from the court that minds should not be made up until the conclusion of the case can prevent people from forming first impressions."). James Lucas describes how resolute first impressions can become in trial in his article on opening statements: "Being human, the first thing the jurors do is form first impressions, and, as one author notes, 'in the opening, the narrative, the outline of the flesh and bones of the case, the juror's first impressions **harden like cement**." 13 U. Haw. L. Rev. At 351 (emphasis added and citation omitted).  Further, as Timothy Perrin notes in his article, the nature of today's jury trial has made the content of opening statement even more important:

> Today closing arguments of more than a few hours are rare; most are shorter. This decline in the empirical importance of argument, coupled with the twentieth-century scientific discovery of the nature of cognitive processes, such as the primacy principle, has enhanced the importance of the opening statement to the truth-finding function of the trial. Consequently, dirty tricks in the opening statement are probably much more lethal than hidebound legal theory can concede.

48 Emory L.J. at 363.[2]

Thus, the use of these types of charts in opening is very dangerous as the jury may be convinced of facts which are contradicted by the evidence, based on the display and use of these highly visual charts in opening statement.

Before the government uses such charts in opening or introduces such charts during the taking of evidence, this Court must first inspect the chart and hear the objections of Mr. Jackson, outside the presence of the jury.

## II.
## CONCLUSION

For the above stated reasons, it is respectfully requested that the Court grant the above motions.

Respectfully submitted,

October 1, 2018        /s/ Debra A. DiIorio
                       DEBRA A. DIIORIO
                       Attorney for Isaiah Smallwood Jackson

---

[2] The "primacy principle" in this passage refers to the fact that people (and more importantly here, jurors) tend to retain what they have heard first better than what comes after. H. Mitchell Caldwell et. al., *Primacy, Recency, Ethos, and Pathos: Integrating Principles of Communication into the Direct Examination*, 76 Notre Dame L. Rev. 423, 465 (2001) This is also referred to as the "primacy effect" – "the tendency to have greater recall for that presented first." *Id.*