1          United States District Court

2        for the Southern District of California

3

4   UNITED STATES OF AMERICA,          )
                                       )   No. 18cr1805-BAS
5        Plaintiff,                    )
                                       )   September 16, 2019
6            v.                        )
                                       )   San Diego, California
7   ISAIAH SMALLWOOD JACKSON,          )
                                       )
8        Defendant.                    )
                                       )

9

10              TRANSCRIPT OF SENTENCING HEARING
              BEFORE THE HONORABLE CYNTHIA BASHANT
11                United States District Judge

12   APPEARANCES:

13   For the Plaintiff:      UNITED STATES ATTORNEY'S OFFICE
                             JANET CABRAL
14                           AMANDA GRIFFITH
                             Assistant United States Attorneys
15
     For the Defendant:      DiIORIO AND HALL
16                           DEBRA ANN DiIORIO
                             Attorney at Law
17

18

19

20

21

22
     Court Reporter:         Dana Peabody, RDR, CRR
23                           District Court Clerk's Office
                             333 West Broadway, Suite 420
24                           San Diego, California 92101
                             DanaPeabodyCSR@gmail.com
10:42   25

1          San Diego, California, September 16, 2019

2                        *   *   *

3          THE COURT:  Good morning.

4          THE CLERK:  Calling matter number 2, 18cr1805, United

10:42  5   States of America versus Isaiah Smallwood Jackson, on calendar

6     for sentencing with a presentence report.

7          MS. CABRAL:  Good morning, Your Honor.  Janet Cabral

8     and Amanda Griffith for the United States.

9        I would note we do have the parents and sisters of the

10:42  10  victim in the courtroom for sentencing today.

11         MS. DiIORIO:  And good morning, Your Honor.

12    Debra DiIorio on behalf of Isaiah Jackson, who will be present

13    in just a moment.

14         THE COURT:  Good morning.

10:43  15       MS. DiIORIO:  Mr. Jackson is now present.  Thank you,

16    Your Honor.

17         THE COURT:  Mr. Smallwood Jackson, this is the date

18    set for your sentencing.  I reviewed the probation officer's

19    report, the government's sentencing summary chart, the

10:44  20  government's sentencing memorandum, your lawyer's objections to

21    the probation report, the government's response to the

22    objections, your lawyer's sentencing summary chart.  Your

23    lawyer submitted some photographs.  I reviewed those

24    photographs.  There was a psychological evaluation and a motion

10:44  25  for a downward departure from your lawyer that I reviewed, and

1    I also reviewed the order of forfeiture in this case.

2        I can tell you my tentative -- first of all, I don't really

3    see grounds for a downward departure as requested by

4    Ms. DiIorio.  On the other hand, I do think 25 years is an

10:44    5    extremely high sentence for a first-time offender, so that's

6    kind of where I stand.

7        Ms. DiIorio.

8            MS. DiIORIO:  Thank you, Your Honor.

9        I understand that because I think from a straight

10:44    10    guidelines perspective, taking the guidelines and attacking how

11    they apply, it's not a strong argument.  I agree with that,

12    although I do think that, you know, the one issue as to him

13    concealing his identity, I think that is a valid issue because

14    again, he did repeatedly state that he was 21 years old, but I

10:45    15    don't want to waste the Court's time on the guidelines.  We

16    filed our paperwork.

17        I do have a problem with -- and again, please don't take

18    this to mean that I don't understand that the offense is

19    serious.  Clearly it is.  But at the same time, it involved sex

10:45    20    between a 21-year-old man and a 14-year-old girl.  All the

21    parties agree that to the extent that "consensual" is the wrong

22    word to use, but there was no force, there was no

23    misrepresentation or coercion other than just the age

24    difference between them, and I think that that's reflected by

10:45    25    the statement of the case agent and the witnesses that's in the

1    probation report.  I agree with that.

2        I think that some of the -- that the Court can take into

3    account the fact that Mr. Jackson has had a very difficult

4    background.  That's supported by the letters that I filed with

10:46    5    the Court and also by the probation report and the

6    psychological report.  He clearly has mental health issues that

7    need to be addressed.

8        But again, I'm not sure that those are necessarily

9    mitigation.  They go to what is a fair and reasonable sentence

10:46    10    in this case, and I just think for someone his age, who has

11    never been in custody before, who has military background, and

12    all the other stuff that I submitted to the Court, a 15-year

13    sentence is a huge sentence for someone that age.  It's not

14    anything that would give the impression that the Court takes

10:46    15    this crime lightly.  It's not anything that would not protect

16    the public from him.  He's going to be on supervision for a

17    long time after that, and as you well know, the conditions of

18    supervision for someone with this kind of an offense are

19    onerous, and they are closely supervised.

10:47    20        So for all of the reasons that I've submitted, and again,

21    just because I think the guidelines in this case represent a

22    punishment that is too harsh, we would ask the Court to

23    consider a 15-year sentence instead.

24        And I would just like to point out that his sister, Tashira

10:47    25    Jackson, is here.  She's been here for all of the proceedings.

1    And as you know from the letters and photographs, that he

2    does have a lot of family support, and the one thing that I did

3    want to focus on, it is in my submission, but as you can also

4    see, there was a lot of personal and emotional trauma that went

10:47   5    on in Mr. Jackson's life leading up to this event.  The issues

6    with his ex-wife and all of the threats that were made against

7    him, his wife and his children are pretty awful.  The probation

8    officer got it wrong and thought that he was the perpetrator,

9    but in fact, he was the victim, and there's an order of

10:48   10   protection that I think might still be active that's against

11   her, and he's one of the protected persons as are his children.

12   So I just wanted to be clear that that was wrong.

13           THE COURT:  Okay, Mr. Smallwood Jackson, anything you

14   want to say before I impose sentence in this case?

10:48   15           THE DEFENDANT:  Yes, ma'am.

16           THE COURT:  Why don't you push the microphone over.

17           THE DEFENDANT:  My attorney advised me not to say too

18   much due to my appellate issue, but I would just like to take

19   responsibility for my mistakes and sincerely apologize to

10:48   20   everyone that I hurt, especially to [MV-1] and to my daughter.

21           THE COURT:  Thank you.

22   Ms. Cabral.

23           MS. CABRAL:  Thank you, Your Honor.

24   I understand the Court's difficulty, and I had great

10:48   25   difficulty as well in analyzing what would be sufficient but

1    not greater than necessary in this case.

2         Taking into consideration the age of the defendant, the age

3    of the victim, and the conduct, and the reason the penalties

4    for this offense are so great is because this defendant's use

10:49   5    of means and facility of interstate commerce by going on a

6    teen-only app designed for those under the age of 20 allowed

7    him to go where he otherwise would never have been able to go.

8    It allowed him to meet a young lady who had just turned 14.  We

9    know from his phone.  If you recall, we had discussion prior to

10:49   10   trial about other contacts that were found on his phone, about

11   discussions that he had with other individuals, about a

12   conversation that he had a month before his contact with this

13   victim where he told someone, "I'm 21 talking to a

14   14-year-old."  So this wasn't an isolated incident.  He sought

10:50   15   out a venue where he could make contact with youthful

16   teenagers.

17        And, Your Honor, that's the essence.  That's why the

18   penalties on this are so large.  This is why this is, you

19   know -- we're making a federal case out of it.  We made a

10:50   20   federal case out of it, Your Honor, because he had access to

21   this child because of his use of the Internet.

22        Your Honor, the victim's mother would like to make a

23   statement.  The government submits.  When we are looking at

24   what is sufficient but not greater than necessary, is 292

10:51   25   months -- is 25 years too much?  Maybe?  But is 15 years

1    enough?  I note that, you know, our victim in 15 years, is she

2    going to forget about all of this?  I don't think so, Your

3    Honor.  This was traumatic.  I mean, you remember the testimony

4    at trial.  The defendant's own statement talking about, you

10:51    5    know, he realized when he got to the car, he had done damage.

6    "Did I hurt you?"

7        So I would ask the Court to take all those things into

8    consideration, and the government believes that a sentence at

9    or near the low end of the guidelines is sufficient but not

10:51    10    greater than necessary in this case.  I'd ask --

11        MS. DiIORIO:  May I just respond to that?  I don't

12    want to interfere.

13        THE COURT:  Why don't I hear, and that way, if you

14    have anything additional to say.

10:52    15        MS. DiIORIO:  Thank you, Your Honor.

16        THE COURT:  Is there the victim's mother?

17        MV-1'S MOTHER:  Yes.

18        MV-1'S FATHER:  Good morning, Your Honor.

19        MV-1'S MOTHER:  Good morning, Your Honor.

10:52    20        MS. CABRAL:  Thank you, Your Honor.  She's asked that

21    I go ahead and read this letter.

22        THE COURT:  If you could move the microphone a little

23    closer to you.  There you go.

24        MS. CABRAL:  Thank you.

10:52    25    Isaiah, what you did to our daughter on September 10th of

10:53

1  2017 was the most heartbreaking and disgusting act anyone could

2  ever do to a little girl.  We are requesting the maximum

3  sentence be given to you as you have destroyed our family and

4  daughter.  What you have done to our daughter with special

5  needs has made her so different.  She is no longer the same

6  child she was before she met you.  Our daughter becomes upset

7  when she's in public places.  She has to have someone with her

8  at all times.  She no longer feels safe going to a public

9  restroom alone.  Even going to our mailbox she asks for someone

10  to come with her.  Our daughter also now refuses to see a male

11  doctor.  And it becomes very problematic when there are no

12  females doctor available for her.

13  She doesn't like to be touched or hugged anymore, not even

14  by her sisters or parents.  Our daughter is scared to be alone

15  and is unable to trust anyone.  You have placed stress, grief,

16  and suffering on our family.  You deliberately and of sound

17  mind went on an app designed for teenagers to find an innocent

18  young girl to prey on.  You were a navy officer.  Married, with

19  two children.  You took an oath to protect and serve America

20  and its citizens.  Instead, you harmed our youngest daughter

21  and in turn, shattered her trust with men in uniform as well as

22  humanity.

23  While every day we have to fight to heal ourselves from

24  your repulsive actions and to try to continue on as the family

25  we once were, we hope that you sit in prison for a long time

1    and reflect on what your actions have done to us and our

2    daughter.

3              THE COURT:  Thank you.

4        I also had a question about whether restitution is being

10:54   5    sought in this case, if we need to set a restitution hearing.

6              MS. CABRAL:  Your Honor, the family has not made a

7    request for restitution in this case.

8              THE COURT:  Okay.

9              MV-1'S MOTHER:  Thank you, Your Honor.

10:54  10              THE COURT:  Thank you.

11        Ms. DiIorio, anything further?

12              MS. DiIORIO:  Yes, a couple things I wanted to point

13    out.  I don't know whether the Court is aware, but the state

14    court has resurrected the state court proceedings.  I have no

10:55  15    idea what's going to happen as a result of that.  Mr. Jackson

16    was removed from MCC last week and taken over to Vista court.

17    He was there all day.  He did not see a judge.  Not sure what

18    the proceedings -- it said it was on for readiness, but that

19    also surprised me.  In any event, I have been unable to

10:55  20    completely ascertain what is happening with those, but I am in

21    contact with the Alternate Public Defender, who is representing

22    him.

23        The other thing that I wanted to -- I'm just trying to look

24    at my notes here.  The other thing that I wanted to point out

10:55  25    is that, again, it's very hard to listen to that testimony, and

it's very hard to think about how this case must have
influenced this entire family and what it's done to them.  I'm
not unmindful of that.

But I have difficulty understanding why it would be
different in 15 years or 20 years or 25 years.  I'm not sure
that the difference between those sentences can cure that
problem.  I don't think it can.  A 15-year sentence -- you
know, the Court has had a lot of these cases.  I've had a lot
of these cases.  And I feel that despite everything that has
come out here, this was an offense that took place within a
24-hour period.  There was a degree of -- it happened all very,
very quickly.

And again, I don't mean this to be insulting in any way,
but this is not the worse of the worse cases that I have seen
in the courthouse, and I think that the sentence in this case
should reflect not only the damage that was done, but also has
to take into account the individual history and characteristics
of the defendant, and in that case, his age, his military
service, and all the other arguments I made I think are
something that the Court can consider in deciding what's
appropriate but not greater than necessary.

And on that, I would submit.

THE COURT:  Okay.  Anything further from probation?

PROBATION:  Nothing further, Your Honor.

THE COURT:  Okay.  Let me talk to you about

1    calculation of the guideline range, then I'll talk about the

2    objections that were made to the guideline range, and then we

3    can talk about the appropriate sentence.

4        First of all, for Count 1, I do find the base offense level

10:57   5    is a 32.  I find that that should be enhanced two points under

6    2G2.1(b)(6) for use of an interactive service, be enhanced two

7    points because there was a commission of a sexual act under

8    2G1.3(b)(4), and enhanced two points because the victim was

9    between the ages of 12 and 16 years old.  That makes that the

10:57   10   base offense for the Count 1 a 38.

11       With respect to Count 2, I find it begins at a base offense

12   level of 28.  I do find, and I will overrule the objection to

13   the enhancement under 2G1.3(b)(2), misrepresentation of

14   identity.  Spotafriend specifically requires that you not be on

10:58   15   it unless you represent that you are a teen, and Mr. Smallwood

16   Jackson represented that he was a teen or misrepresented that

17   he was a teen so that he could interact with teens and go on

18   that.  And I think that that was a knowing representation that

19   was used to persuade or facilitate his influence on the minor,

10:58   20   so I do find that an enhancement under 2G1.3(b)(2) is

21   appropriate of two points.  Again, two points for the use of an

22   interactive service and again, two points for commission of a

23   sexual act makes the base offense level for Count 2 a 34.

24       Under the grouping of offenses, that gets -- then be 38,

10:59   25   gets enhanced two points because of the two offenses.

1    So that makes his total offense level a 40.  The Criminal

2  History Category is a I because he has no background, criminal

3  background, and that makes his guidelines 292 months to 365

4  months.

10:59   5    With respect to the objections, I discussed the first

6  objection.

7    The second objection has to do with the fact that he was

8  not AWOL six times.  He just falsified his sick leave.  I'll

9  sustain that objection, although I'm not sure it ultimately

10:59  10  matters given the fact that what he's not objected to is the

11  fact that he was in the process of being potentially kicked out

12  of the military for falsifying sick leave, and he was having

13  some issues with his military service.

14    MS. DiIORIO:  Actually, Your Honor, I'm sorry to

10:59  15  interrupt you.  I did object to the notion that he was going to

16  be kicked out.  I spoke with his lieutenant and with everyone

17  else.  This thing was pending for months.  Nobody was really

18  making any moves to do anything at all with it, and even in the

19  separation letter that I think the government gave you as an

11:00  20  exhibit, one of the reasons why they accepted the Other Than

21  Honorable Discharge was because of the likelihood that even if

22  the charges were sustained, that he would remain in the

23  military.

24    THE COURT:  Okay.  I'm not sure you can separate this

11:00  25  offense from what was -- eventually led to his Dishonorable

1    Discharge, so I'll sustain that objection.

2        I will sustain the objection to the restraining order, that

3    the restraining order was not against Mr. Smallwood Jackson, it

4    was his restraining order.  I think that's an appropriate

11:00    5    objection.  I'll sustain that.

6        You know, I'm going to overrule the objection to the extent

7    the probation department just describes the conduct with the

8    other 15-year-old.  I'm not making a finding one way or another

9    about what that means, but I think all the probation department

11:00   10    is saying is that this is what was represented to the probation

11    department, and they're passing that on, and so I'm going to

12    overrule that objection.  That is what someone said, that he

13    made contact with a 15-year-old.  I don't know that it

14    ultimately plays into my consideration in this case, but I

11:01   15    think it's appropriate for the probation department to pass on

16    whatever information they get from other individuals, so I'll

17    overrule that objection.

18        And then there was an objection to the extent the probation

19    department says he does not have family support because clearly

11:01   20    he does have family support from his sister.  She is here, so I

21    will sustain that objection to the extent there was a

22    representation that he does not have family support.

23        Now, as far as the appropriate sentence, here's some

24    considerations that I think are appropriate, Mr. Smallwood

11:01   25    Jackson.  I can't ignore the fact that it seems to me that you

1    engaged in clearly predatory conduct.  You targeted, and

2    watching what unfolded, you targeted and groomed the victim in

3    this particular case, and that appears to me not just someone

4    who's interested in looking for love, you were somebody who

11:01    5    was -- it was predatory conduct, and I think that's an

6    appropriate consideration for me.

7        I also have real concern about Mr. Smallwood Jackson's lack

8    of remorse.  I understand that at this point, he's not talking

9    because he went to trial, and he's preserving his appellate

11:02    10   rights, but, you know, when he gets -- the interview

11   post-arrest when he waives his rights, there's just a

12   remarkable lack of concern about anyone except himself, and

13   that is very troubling to me.

14       And I also take into consideration the fact that this was a

11:02    15   vulnerable victim.  Even if you didn't know it, she had mental

16   health issues or disabilities that did make her more of a

17   vulnerable victim even if you didn't know that, and I think

18   that's something I can't ignore.

19       On the other hand, I am considering the fact that you are

11:02    20   young.  I'm not sure your military service has been stellar,

21   but I will take that into consideration.

22       I, frankly, don't think this was an imperfect acceptance of

23   responsibility.  I understand Mr. Smallwood Jackson was very

24   upset by the fact that this got removed from state court and

11:03    25   suddenly he was looking at more time, but I just don't see any

sign that Mr. Smallwood Jackson is remorseful for anything other than the fact that he's in custody.

I did consider the psychological evaluation. I think the psychological evaluation has some big holes. I mean, I think it doesn't address the fact that he specifically targeted underage girls with sort of predatory behavior, as I mentioned before, and I think the fact that the psychological evaluation finds Mr. Smallwood Jackson's relationship with his wife is a positive influence when, again, in the post-arrest interview, he didn't seem to care much about that relationship with his wife. So I'm not sure the psychological evaluation is that helpful.

So taking into consideration all of those factors, I do think that 20 years in custody is a sufficient-but-not-greater-than-necessary sentence in this case. I think 240 months takes into consideration Mr. Smallwood Jackson's youth, but I also think it takes into consideration what he did in this case, which I think was more severe than your typical underage sex kind of a case. I think this was a, as I say, predatory behavior in this case.

So I will sentence you to 240 months. That will be concurrent on both counts. When you are released from custody, you will be on supervised release for a period of ten years. I will adopt -- let's go through each of them. The probation department is recommending conditions of supervised release.

                  First of all, I will order that you report all vehicles
that you own or operate.  If the probation department has
reasonable suspicion to believe that you're violating your
supervised release or committing any criminal conduct, they can
search you or your property to see if you're doing anything.
They can also search your electronic communications, your
phone, or your computer to make sure that you aren't doing
anything similar in this case if they have reasonable suspicion
to believe that you are.  I will order that these conditions of
supervised release be disclosed to any employer so that they
can make sure that your restrictions are similarly conveyed to
the employer.  Supervised release condition Number 4, the
government proposes an alternative condition, and I think
that's appropriate, so I will adopt that alternative, and I
think I should make it clear for the record that it is not
prohibiting Mr. Smallwood Jackson from using the internet.
It's just requiring that he have some sort of monitoring device
or that the probation department know about it.  So I will
order that he not use or possess any computer or
computer-related devices which can communicate data via the
modem, dedicated connections, or cellular networks and their
peripheral equipment and which have the ability to access
materials depicting sexually explicit conduct involving
children as defined by 18 USC 2256(2) and/or materials with
depictions of actual sexually explicit conduct involving adults

1    without prior approval by the Court or the probation

2    department, and then that you consent to the installation of

3    systems that will enable the probation officer to monitor

4    computer use at any computer owned or controlled by

11:06    5    Mr. Smallwood Jackson, and Mr. Smallwood Jackson shall pay for

6    the cost of the installation of that computer software.

7        Basically what that means is before you use any computer or

8    phone or anything that connects to the Internet, you need to

9    let the probation department know, and they need to make sure

11:07   10    that if they want to install some sort of monitoring software

11    on there to make sure that you're not using it to access

12    similar kinds of things that you did in this particular case,

13    they can do that.  So I will adopt that condition.

14        I will order that you not associate with or contact with

11:07   15    any known sex offenders unless it's in a counseling setting, a

16    treatment setting.

17        I will order that you not have any contact, direct or

18    indirect, either telephonically, visually, verbally, through

19    written communication or through third-party communication,

11:07   20    with the victim or any of the victim's family.

21        I think that condition Number 7 -- I think that the

22    objection of defense counsel is well taken on the fact that

23    this may be improper delegation of authority to the probation

24    department.

11:07   25        So at this point I'm going to order that you not have any

 1  contact with anyone under the age of 18 except your own child

 2  without the permission of the probation department.  And so

 3  that way, it's not -- we don't need to have a presence of a

 4  supervising adult, we don't need -- just don't have any contact

11:08   5  with anyone under the age of 18.  If it looks like you need it

 6  for work or for something else, then you can come and get

 7  permission from the Court, but I just don't see any reason why

 8  you would need to have contact with anyone under the age of 18.

 9  By then, your biological children will be grown up, so I just

11:08  10  don't see --

 11          MS. DiIORIO:  I think by then --

 12          THE COURT:  There may be grandchildren.

 13          MS. DiIORIO:  He'll come back into court for that

 14  or --

11:08  15          THE COURT:  If he needs to have contact.  I don't see

 16  why you would need to have contact with anyone under the age of

 17  18, so I'm ordering no contact other than a biological child or

 18  grandchild under the age of 18.  If it looks like he needs

 19  contact, probation can ask me for a modification, and I'll sign

11:09  20  off on it.

 21      I will order that you not accept or commence employment or

 22  volunteer activity without approval of the probation

 23  department.  I will order that you not loiter within the

 24  definition, the state definition, of "loitering."  So that

11:09  25  means you can go to a library, you can go to an amusement park,

1    but don't loiter, don't hang out without a purpose of being

2    there, within 200 yards of a school, schoolyard, playground,

3    park, amusement center, park, public swimming pool, arcade,

4    daycare center, carnival, recreation venue, library, or other

11:09    5    places primarily frequented by people under the age of 18.  So

6    by "loiter," it means hang out there.

7        I will adopt recommendation number -- condition Number 10.

8    I will order that you not possess or view any materials such as

9    videos, magazines, photographs, computer images, or other

11:10    10    matter that depicts sexually explicit conduct involving

11    children.  And that's defined by 18 USC 2256(2).  And/or actual

12    sexually explicit conduct involving adults as defined by

13    18 USC 2257(h)(1) and that you not patronize any place where

14    such materials or entertainment are the primary material or

11:10    15    entertainment available.  I don't find that's

16    unconstitutionally vague.  I think possession of sexually

17    explicit conduct involving children or material that depicts

18    sexually explicit conduct involving children is illegal anyway

19    and is found not to be unconstitutional, and I don't think it

11:10    20    includes simulated, it includes actual sexual intercourse,

21    actual bestiality, actual masturbation, actual sadistic or

22    masochistic abuse, actual lascivious exhibit of genitals or

23    pubic areas.  That's talking about the adults' actually

24    explicit conduct, and I think that that is not

11:11    25    unconstitutionally vague.

1      MS. DiIORIO:  Does that include movies that are not

2  real, like documentaries?  I'm concerned about him going to the

3  movies.

4      THE COURT:  He can't go to the movies if it displays

11:11    5  actual sexually explicit conduct, meaning actual sex, so he

6  can't go and watch pornography where people are actually having

7  sex.

8      MS. DiIORIO:  But people have sex in every movie, PG

9  to --

11:11   10      THE COURT:  They aren't actually having sex.  This has

11  to do with actual sexual conduct.  So it actually has to be

12  intercourse appearing in the movie, actual masturbation

13  appearing in the movie.  That's why this has been changed from

14  sexually explicit conduct is limited to children and actually

11:12   15  explicit conduct is the adults because it has to be -- they

16  have to actually be having sex in the movie, which I don't

17  think happens in PG movies, that they actually have sex on the

18  screen.

19      MS. DiIORIO:  Right, but so the Court would have an

11:12   20  issue with him seeing an R-rated --

21      THE COURT:  If the individuals in the film are

22  actually engaging in sexual penetration on the film, yes, he

23  may not watch that.

24      MS. DiIORIO:  I understand that, but I just -- the

11:12   25  issue that I'm trying to raise is I think it's impossible to

1    tell when you go to a movie.  They make it look as realistic as

2    possible.  It's not really possible to tell.

3           THE COURT:  You can tell from the rating.

4           MS. DiIORIO:  So R-rated movies --

11:12  5           THE COURT:  If it's actually sexually explicit

6    conduct, he can't watch it.

7           MS. DiIORIO:  All right.  I'll just note my objection

8    to that, Your Honor.

9           THE COURT:  Okay.  I will order that you complete a

11:12  10   sex offender evaluation, which may include periodic

11   psychological, physiological testing, and a completion of a

12   visual reaction time assessment at the direction of the Court.

13       At this point I'm ordering that you complete a sexual

14   offender evaluation.  If it looks like there is additional

11:13  15   physiological testing, come to the Court and ask me for it so

16   it's not being delegated to the probation department.

17       At this point I'm going to order that he participate and

18   successfully complete an approved state certified sex offender

19   treatment program.  I'll put it sort of in the negative.  If it

11:13  20   is deemed unnecessary by the treatment provider, then you can

21   apply to the Court and take that condition off, but at this

22   point, I'm ordering that he participate and successfully

23   complete an approved state certified sex offender treatment

24   program.

11:13  25       I will authorize the release of the presentence report, the

1    available psychological evaluations to the treatment provider,

2    and I will allow for reciprocal release of information between

3    the probation officer and the treatment provider.

4        I will order that Mr. Smallwood Jackson may be required to

11:14    5    contribute to the cost of services rendered in an amount to be

6    determined by the probation officer based on an ability to pay,

7    and I don't think that's improper delegation to the

8    probation officer.  They can determine whether he has the

9    ability to pay.  He can always come to the Court if he thinks

11:14   10    that's being improperly determined.

11       I will order that polygraph examinations may be used.  I

12    understand there's an objection to that.  It's not being used

13    in the criminal proceedings, and failing a polygraph are not

14    grounds for revoking his supervised release.  The only thing

11:14   15    that would be grounds for revoking his supervised release is

16    refusing to take one if it's required as part of the formal

17    treatment program.

18            MS. DiIORIO:  Perhaps that can be addressed in the

19    future, but I have had experience where my client did not pass

11:15   20    the polygraph test, and there were punitive sanctions in the

21    form of supervision placed as a direct result of them not

22    passing the test.

23            THE COURT:  If that happens, you can bring that in

24    front of me.  I would have to make the determination about the

11:15   25    sanctions anyway, so you can certainly raise that objection at

1    that point.

2         I will order that you reside in a residence approved by the

3    probation department and to keep the probation department

4    updated as to any changes in your address.

11:15    5         I will add 180 days RRC as directed by the probation

6    department so that you can be released to a halfway house for

7    six months when we figure out where you're going, you and the

8    probation department figure out where you're going to live, and

9    I will order that you be monitored while under supervision with

11:15   10    location-monitoring technology to make sure that you are

11    complying with all of your conditions of supervision.  You

12    shall pay all or part of the cost of the location monitoring

13    based on your ability to pay.  I will not impose a fine.  I

14    will impose a $200 special assessment.

11:16   15         Is there anything else from probation?

16              PROBATION:  No, Your Honor, I believe you covered all

17    the conditions.

18              THE COURT:  Okay.

19              MS. DiIORIO:  I have a question.  Is the location

11:16   20    monitoring intended to be for the entire ten-year period of

21    supervision?

22              THE COURT:  No.  What I would like to do, however, is

23    begin with the location-monitoring technology, and then I don't

24    know how the best way is to terminate that.

11:16   25              PROBATION:  Do you want to put a specific time on it

```
 1  and then see how he does?
 2          THE COURT:  I want to see how he does.  Continue it
 3  all ten years if he's struggling with the conditions of
 4  supervised release, but if he's doing well, then take it off,
 5  so I don't know -- maybe what I should do is order that it be
 6  for all ten years at this point, but tell the probation
 7  department that I think if he's doing well after a couple of
 8  years that I am not adverse to seeking termination of that
 9  location monitoring.
10          PROBATION:  Okay, Your Honor.
11          MS. DiIORIO:  I just think it needs to be your word
12  because who knows who the probation officer is going to be at
13  that point.
14          THE COURT:  If you can make a note saying I am not
15  adverse to terminating the location-monitoring technology after
16  a couple years if he is doing well under supervised release and
17  appears to be following all the conditions.
18      Anything further from the government?
19          MS. CABRAL:  Yes, Your Honor.  Document 44 is the
20  preliminary order of criminal forfeiture.
21          THE COURT:  I will adopt the final order of forfeiture
22  and forfeit the phone and the images.
23          MS. CABRAL:  And we'd ask that be included in the
24  judgment.
25          THE COURT:  Okay.  I will make that order.
```

11:16 (line 5)
11:17 (line 10)
11:17 (line 15)
11:17 (line 20)
11:17 (line 25)

1      MS. DiIORIO:  I have a recommendation or request for

2  recommendation for placement.

3      THE COURT:  Sure.

4      MS. DiIORIO:  His entire family exempt for Tashira is

11:17   5  in Virginia, and there is a recommendation for FCI Petersburg

6  in Virginia.  Obviously, that would need to be commensurate

7  with his security level as determined by BOP.  I didn't do that

8  at this point, but if the Court would recommend it to

9  facilitate family visits.

11:18  10      THE COURT:  I'll recommend FCI Petersburg or as close

11  thereto as possible to facilitate family visits.

12      MS. DiIORIO:  Thank you.  I think the only person

13  that's named in the probation report who has a residence is his

14  sister, who is in L.A., so that's why we're trying to get you

11:18  15  to say "Virginia."

16      THE COURT:  If you just put "Virginia" in there, that

17  would be great.

18      MS. DiIORIO:  Thank you.

19      THE COURT:  Mr. Smallwood Jackson, you do have a right

11:18  20  to appeal your conviction as well as your sentence.  If you

21  can't afford a lawyer on appeal, one will be appointed to

22  represent you at no cost to you.  If you do wish to appeal

23  either your conviction or your sentence, that must be filed

24  within 14 days of today's date or you lose that right.  Do you

11:18  25  understand?

```
 1              THE DEFENDANT:  Yes, ma'am.

 2              THE COURT:  Okay.  Anything further?

 3              MS. CABRAL:  No, Your Honor.

 4              MS. DiIORIO:  No, Your Honor.

 5              THE COURT:  Thank you.

 6         She was asking whether there's a JVTA.

 7              MS. GRIFFITH:  No.

 8              MS. CABRAL:  The United States would waive that.

 9              THE COURT:  Okay.  Thank you.

10                        ---oOo---

11

12                   C-E-R-T-I-F-I-C-A-T-I-O-N

13

14         I certify that the foregoing is a correct transcript from

15    the record of proceedings in the above-entitled matter.

16

17         Dated November 4, 2019, at San Diego, California.

18

19
                              /s/ Dana Peabody_____
20                            Dana Peabody,
                              Registered Diplomate Reporter
21                            Certified Realtime Reporter

22

23

24

25
```

11:18 (line 5)